# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 17-1806
(not to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | Special Master Corcoran |
| MARK OLSAVICKY, JR., *and* | * | |
| AUTUMN OLSAVICKY, | * | |
| *as Administrators of the estate of* | * | |
| *J.O., an infant, deceased,* | * | |
| | * | |
| Petitioners, | * | Filed: June 4, 2019 |
| | * | |
| v. | * | |
| | * | Motion for Decision Dismissing |
| SECRETARY OF HEALTH | * | Petition. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Rudolph L. Massa*, Massa Law Group, PC, Pittsburgh, PA, for Petitioners.

*Voris E. Johnson*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION DISMISSING CASE[1]

On November 16, 2017, Mark Olsavicky, Jr., and Autumn Olsavicky filed a petition as administrators of the estate of their deceased infant son, J.O., seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioners alleged that the vaccines J.O. received on November 18, 2015—which included Diphtheria-Tetanus-acellular Pertussis, Hepatitis B, haemophilus influenza B conjugate, Pneumococcal PCV 13, polio, and

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

RotaTeq—caused his death two days after vaccination, on November 20, 2015. Pet. at 1. Petitioners presented two theories of causation: that J.O. experienced an acute encephalopathy which led to his death; or, in the alternative, that he experienced hypoxia due to an acute vaccination-induced cytokine cascade, which was a substantial factor in bringing about his death. *Id.* at 11–12.

During a status conference on August 13, 2018, I expressed doubts about the claim's viability, noting that several past Vaccine Program decisions had addressed similar claims involving Sudden Infant Death Syndrome ("SIDS") and uniformly found in favor of the Respondent. I therefore directed Petitioners to differentiate their claim from these past SIDS decisions. Order at 1, dated Aug. 13, 2018 (ECF No. 16). The parties filed briefs in support of their respective positions in November 2018. *See* Br. in Support of the Basis of Pet'rs' Claim, filed Nov. 5, 2018 (ECF No. 19) ("Pet. Br."); Resp't's Resp. to Br. in Support of the Basis of Pet'rs' Claim, filed Nov. 29, 2018 (ECF No. 20). In their brief, Petitioners proposed a different theory of causation, alleging that J.O. experienced a vaccine-induced enlargement of the thymus, which obstructed his windpipe and caused his death. Pet. Br. at 8.

Following a status conference on April 1, 2019, I expressed concerns about this novel theory of causation put forth by the Petitioners, as my own preliminary research (which, I noted, does not constitute evidence in this case) revealed that it likely had been discredited many decades ago. *See* Order at 2, dated Apr. 1, 2019 (ECF No. 21). Accordingly, I directed Petitioners to file a status report by the end of that month indicating whether they wished to offer an expert report in support of their theory of causation despite my concerns about its viability. *Id.* Unable to secure expert support, Petitioners instead filed a Motion seeking dismissal of their claim on May 31, 2019. *See generally* Pet'r's Mot. for Decision Dismissing Pet. (ECF No. 24).

To receive compensation under the Vaccine Act, a petitioner must prove either (1) that he suffered a Table injury, or (2) that he suffered an injury that was actually caused by a vaccine. *See* Sections 11(c)(1), 13(a)(1)(A). However, J.O. did not suffer a Table injury, and the record does not contain a medical expert's opinion or any other persuasive evidence indicating that J.O.'s death could have been caused by any of the vaccines he received on November 18, 2015.

J.O.'s premature passing was certainly a devastating tragedy. However, there is insufficient evidence for Petitioners to meet their burden of proof. In keeping with Section 11(c)(1)(A), their claim therefore cannot succeed and must be dismissed.

Accordingly, I hereby **DISMISS** Petitioners' case. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[3]

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master
