# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1806
(not to be published)

| | | |
|---|---|---|
| MARK OLSAVICKY, JR., *and* <br> AUTUMN OLSAVICKY, <br> *as Administrators of the estate of* <br> *J.O., an infant, deceased*, <br><br> Petitioners, <br><br> v. <br><br> SECRETARY OF HEALTH <br> AND HUMAN SERVICES, <br><br> Respondent. | * * * * * * * * * * * * * | Chief Special Master Corcoran <br><br><br><br> Filed: March 4, 2020 <br><br><br> Fees; Reasonable Basis; Sudden <br> Infant Death Syndrome. |

*Rudolph L. Massa*, Massa Law Group, PC, Pittsburgh, PA, for Petitioners.

*Voris E. Johnson*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS[1]**

On November 16, 2017, Mark Olsavicky, Jr., and Autumn Olsavicky filed a petition as administrators of the estate of their deceased infant son, J.O., seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioners alleged that the vaccines J.O. received on November 18, 2015—which included Diphtheria-Tetanus-acellular

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Pertussis, Hepatitis B, haemophilus influenza B conjugate, Pneumococcal PCV 13, polio, and RotaTeq—caused his death two days after vaccination, on November 20, 2015. Pet. at 1. Petitioners presented two theories of causation: that J.O. experienced an acute encephalopathy which led to his death; or, in the alternative, that he experienced hypoxia due to an acute vaccination-induced cytokine cascade, which was a substantial factor in bringing about his death. *Id.* at 11–12.

After a few years of attempting to provide support for their claim, Petitioners filed a motion for dismissal. Motion to Dismiss, filed on May 31, 2019 (ECF No. 24). I granted that Motion on June 4, 2019. Decision Dismissing Case (ECF No. 25). Now Petitioners have filed a motion requesting attorney's fees and costs. Motion for Fees and Costs, filed January 7, 2020 (ECF No. 28) ("Mot.") (requesting $35,362.08 total, representing $27,830.00 in attorney's fees and $7,532.00 in costs). For the reasons below I GRANT IN PART and DENY IN PART Petitioners' motion.

## BACKGROUND

**Procedural History**

After filing their Petition on November 16, 2017, Petitioners submitted medical records and supporting documents. *See, e.g.*, Petitioners' Statement of Completion, filed May 29, 2018 (ECF No. 12). Respondent filed their 4(c) report on August 3, 2018. (ECF No. 15) ("Report"). Therein Respondent resisted compensation because he maintained Petitioners had not shown J.O. suffered a table injury or a proven causation in fact. Report at 8–9. Respondent also suggested that exposure to secondhand smoke contributed/caused J.O.'s Sudden Infant Death Syndrome ("SIDS"). *Id.* at 9.

Shortly after the Report was filed, I conducted a status conference. Order, filed August 13, 2018 (ECF No. 16). At that time, I expressed doubts about the claim's viability and reasonable basis. *See* Order at 1–2.  Specifically, I informed Petitioner that other special masters had decided several SIDS decisions uniformly in favor of Respondent, and that those decisions constituted "a body of persuasive prior authority that does not suggest a similar claim will succeed where so many others have failed." Order at 2. I did acknowledge that one SIDS case had been successful—but had been recently reversed on appeal. Order at 1–2 (citing *Boatmon v. Sec'y of Health & Human Servs.*, No. 13-611V, 2017 WL 3432329 (Fed. Cl. Spec. Mstr. July 10, 2017), *rev'd*, 138 Fed. Cl. 566 (July 3, 2018).[3] In light of the significant persuasive authority contrary to Petitioners' claim, I ordered Petitioners to file a brief substantiating the basis for their claim and differentiating it from past SIDS decisions. Order at 2.

---

[3] In November 2019 the Federal Circuit affirmed the Court of Federal Claims opinion reversing the decision of the special master. *Boatmon v. Sec'y of Health & Human Servs.*, 941 F.3d 1351 (Fed. Cir. 2019) (affirming on other grounds).

The parties filed briefs in support of their respective positions in November 2018. *See* Pet'rs' Br., filed Nov. 5, 2018 (ECF No. 19); Resp't's Br., filed Nov. 29, 2018 (ECF No. 20). In their brief, Petitioners proposed a different theory of causation in fact, alleging that J.O. experienced a vaccine-induced enlargement of the thymus, which allegedly had obstructed his windpipe and caused his death, or that he suffered from a table encephalopathy. Pet'rs' Br. at 8.

I conducted another status conference on April 1, 2019. Order filed April 1, 2019 (ECF No. 21) ("April Order"). I noted that that my own preliminary research (which unquestionably did not constitute evidence in this case) revealed that the theory that SIDS results from an enlarged thymus gained popularity in the nineteenth century, but was subsequently discredited by the mid-twentieth century.[4] Accordingly, I directed Petitioners to file a status report by the end of that month indicating whether they wished to offer an expert report in support of their theory of causation despite my concerns about its ultimate viability. *Id.* Unable to secure an expert support, Petitioners instead filed a motion seeking dismissal of their claim on May 31, 2019. *See generally* Pet'r's Mot. for Decision Dismissing Pet. (ECF No. 24). I granted Petitioners' motion on June 4, 2019. Decision (ECF No. 25).

After dismissal, Petitioners filed a motion for attorney's fees and costs. Motion for Fees and Costs, filed January 7, 2020 (ECF No. 28) ("Mot."). In total, Petitioners seek $35,362.08 (representing $27,830.00 in attorney's fees and $7,532.08 in costs). Respondent opposed Petitioners' motion and argued that the claim lacked reasonable basis—that there was no objective evidence in the record to support a claim for compensation for either a table injury or an off-table injury. Respondent's Opposition to Fees and Costs at 7–8, filed on Jan. 15, 2020 (ECF No. 30) ("Opp.").

Petitioner replied that there was a reasonable basis because: (1) the cause of J.O.'s death was unexplained and therefore not technically a SIDS claim[5]; (2) even if this was a SIDS claim, *Boatmon* had not yet been reversed at the time of filing; (3) Petitioners' affidavits and the medical records supported a finding of acute encephalopathy; and (4) after the April 1, 2019, status conference Petitioners were permitted to consider expert support, but that support was not

---

[4] *See* Second Order at 2 (citing J. Ritterman, *To Err is Human: Can American Medicine Learn from Past Mistakes?*, 21 Permanente J. 181, 181–82 (2017) ("In the first edition of his radiology textbook in 1945, John Caffey, MD, a pioneer in pediatric radiology, proclaimed that 'a causal relationship between hyperplasia of the thymus and sudden unexplained death has been completely refuted.'" (footnote omitted)) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5478585/)); *see also* Michael J. Abrams et al., *Thyroid Cancer Risk 40+ Years After Irradiation for an Enlarged Thymus* 174(6) Radiation Research 753 (2010) ("In the first half of the last century, a misconception of the normal size range of infant thymus glands and the mistaken belief that an enlarged thymus could lead to status lymphaticus and suffocation led to thousands of infants and children being irradiated for thymic enlargement." (footnote omitted)) (available at https://www.ncbi nlm nih.gov/pmc/articles/PMC3080025/).

[5] Petitioners also argue that comparison to SIDS cases is inappropriate here because the claim is better classified as a sudden unexplained infant death ("SUID"). Reply at 4–5 n.8 (citing Autopsy Rep.). However, this distinction is one of form rather than substance. *See* 2 *Nelson Textbook of Pediatrics* 1998 (20th ed. 2016) ("Sudden unexpected infant death (SUID) is a term that encompasses all sudden unexpected infant deaths. Unexplained SUID is equivalent to SIDS.").

available because pathological slides were not obtained from J.O.'s thymus during autopsy. Petitioners' Reply at 4–12, filed Jan. 20, 2020 (ECF No. 31) ("Fees Reply").

## ANALYSIS

### I. Whether Petitioners' Claims Had A Reasonable Basis

Under the Vaccine Act, the special master—within their discretion—may award fees and costs to an unsuccessful petitioner if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Here, Respondent only contests the reasonable basis prong. Opp. at 6 n.1. Accordingly, the analysis focuses on reasonable basis.

#### A. *Reasonable Basis Standard*

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Human Servs.*, No. 16-551V, slip op. at 5 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). In short, the claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Id.* Reasonable basis inquiries are not static, nor do they only analyze when the petition was filed; instead reasonable basis is considered when the petition is filed, but is revisited as the case progresses. *See Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they reviewed their expert's opinion which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.*, 144 Fed. Cl. 72, 77 (Fed. Cl. 2019). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[6] The Court of Federal Claims has affirmed that the "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that

---

[6] *See also Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 285 (Fed. Cl. 2014) (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

should be considered. *Carter v. Sec'y of Health & Human Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017).

> B. *The Claim had Reasonable Basis when it was Filed but Later Lost Reasonable Basis*

Initially, I find that this claim had reasonable basis when it was filed, given the presence of objective evidence in support. For instance, the timing of the vaccines in relation to J.O.'s death supports this claim's reasonable basis. And at least at the time this claim was filed, SIDS claims were still viable. Although several decisions had thrown SIDS claims into doubt, the theory was not so unsuccessfully and extensively litigated that new claims would lack reasonable basis absent new scientific or medical evidence—unlike claims involving autism. *See, e.g.*, *Motuzyuk v. Sec'y of Health & Human Servs.*, No. 18-586V, 2019 WL 4121071 (Fed. Cl. July 24, 2019) (finding that an autism claim lacked reasonable basis and that "assessment was grounded in the fact that Petitioner had not demonstrated how her claim could be meaningfully distinguished from the numerous past Program decisions finding that vaccines do not cause autism, either on factual grounds or in regard to the proffered causation theory"). In particular, there was at least one decision supporting Petitioners' claim—*Boatmon*—although that decision has since been reversed. In sum, although the claim at outset did not appear particularly robust given the disposition of the majority of SIDS claims in the Vaccine Program, it had objective facts in its support plus at least one well-reasoned decision favoring a like-situated petitioner.

I also find, however, that the claim's reasonable basis ceased after the April 1, 2019 status conference. By then, I had preliminarily determined that that Petitioners' Table claim would not succeed because the medical records did not satisfy diagnostic requirements. Plus, my own research suggested their enlarged thymus theory—which supported their non-Table claim—was no longer good science. Thus, by April 2019, what objective evidence existed for the claim was now outweighed by the consistency of SIDS determinations in the Program, along with Petitioners' inability to offer an alternative causation theory that might succeed where the prior theories had failed.

I note that my reasonable basis determination in this case is the product of the temporal period in which the claim was filed. I would likely find any *new* claim alleging SIDS (absent a causation theory different from that previously rejected, and supported by new research) lacked reasonable basis from the outset, and would so inform the petitioner. This case, however, was filed before the *Boatmon* appeals were resolved, and therefore fairness dictates that some fees be awarded despite my misgivings throughout the claim's life of its overall viability.

## II. Award of Final Fees and Costs

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human*

*Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

I have recently considered the requested rates for Petitioners' counsel herein. *See Henderson v. Sec'y of Health & Human Servs.*, No. 18-0193V, 2019 WL 7482155 (Fed. Cl. Spec. Mstr. Nov. 26, 2019) (considering requested rates and fees of Rudolph M. Massa). In *Henderson*, as in this case, Mr. Massa requested a rate of $500 per hour for all the time he billed and $150 for all the time billed by his paralegal. *See id.* at *2 (requesting fees from 2016 to 2019). Those rates were found excessive and reduced. *Id.* Petitioners do little to explain why I should disregard *Henderson*—and what little effort they do make is unpersuasive. Accordingly, consistent with my recent decision in *Henderson*, I reduce the requested rates to the following:

|  | **Requested Rate for 2016** | **Adjusted Rate for 2016** | **Requested Rate for 2017** | **Adjusted Rate for 2017** | **Requested Rate for 2018** | **Adjusted Rate for 2018** | **Requested Rate for 2019** | **Adjusted Rate for 2019** |
|---|---|---|---|---|---|---|---|---|
| **Mr. Massa** | $500.00 | $312.00 | $500.00 | $320.00 | $500.00 | $340.00 | $500.00 | $365.00 |
| **Paralegal** | $150.00 | $130.00 | $150.00 | $135.00 | $150.00 | $140.00 | $150.00 | $145.00 |

Thus, the requested fees for Mr. Massa are reduced as follows:

| | Attorney's Fees for Mr. Massa | | | | | |
|---|---|---|---|---|---|---|
| | **Attorney Hours** | **Requested Attorney Rate** | **Awarded Attorney Rate** | **Total Attorney's Fees Requested** | **Total Attorney's Fees Awarded** | **Reduction** |
| **2016** | 3.5 | $500.00 | $312.00 | $1,750.00 | $1,092.00 | $658.00 |
| **2017** | 20.9 | $500.00 | $320.00 | $10,450.00 | $6,688.00 | $3,762.00 |
| **2018** | 24.8 | $500.00 | $340.00 | $12,400.00 | $8,432.00 | $3,968.00 |
| **2019** | 5.2 | $500.00 | $365.00 | $2,600.00 | $1,022.00 | $1,578.00 |
| **Total** | 50.5 | -- | -- | $25,250.00 | $16,686.50 | $9,966.00 |

In addition, and in light of my reasonable basis determination, the fees awarded column does not include hours from after April 1, 2019, which have already been disallowed. However, I will still award Petitioners 1.5 hours of attorney's fees after this date to account for the winddown of this case. *See Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 8 (Fed. Cl. 2017). This results in a total of allowable 2.8 attorney hours in 2019.

And the requested paralegal fees are reduced as follows:

| | Paralegal Fees | | | | | |
|---|---|---|---|---|---|---|
| | **Paralegal Hours** | **Requested Paralegal Rate** | **Awarded Paralegal Rate** | **Total Paralegal Fees Requested** | **Total Paralegal Fees Awarded** | **Reduction** |
| **2016** | 0.7 | $150.00 | $130.00 | $105.00 | $91.00 | $14.00 |
| **2017** | 0.1 | $150.00 | $135.00 | $15.00 | $13.50 | $1.50 |
| **2018** | 0.4 | $150.00 | $140.00 | $60.00 | $56.00 | $4.00 |
| **2019** | 0 | $150.00 | $145.00 | $- | $- | $- |
| **Total** | 1.2 | -- | -- | $180.00 | $160.50 | $19.50 |

This results in a reduction of $9,985.50.

      I have reviewed Petitioners' other requested fees and costs and find them reasonable. These include requesting medical records, consulting with and retaining experts to prepare for the case, and setting up an estate for the deceased so that this case could be properly administered. Accordingly, I award the rest of Petitioners' requested fees and costs.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I hereby GRANT Petitioners' Motion for attorney's fees and costs. I award a total of **$25,376.58** (representing $17,844.50 in fees and $7,532.08 in costs) as a lump sum in the form of a check jointly payable to Petitioners and Petitioners' counsel. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.